UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:11-CR-114-KKC-REW |
| v. ) | |
| ) | |
| RICHARD RANKIN, ) | RECOMMENDED DISPOSITION |
| ) | |
| Defendant. ) | |

\* \* \* \* \*

The Court considers the suppression motion of Richard "Ricky" Rankin, DE #34, a motion that Co-Defendant Nathan Rankin seeks permission to join.[1] The parties completed initial and supplemental briefing, and the Court conducted a suppression hearing. Having considered the full record, the Court recommends **DENIAL** of the motion to suppress. Probable cause supported the warrant at issue in all respects and, in any event, *Leon* clearly would validate the search. There is no basis for suppression of the search fruits.

I.  **Relevant Background**

The warrant at issue resulted from investigation of suspected oxycodone trafficking in the Garrard County area. The underlying affidavit, DE #50-1, targeting the residence of Richard Rankin at 111 Price Court in Lancaster, sets forth the following key elements:

---

[1] The Court deferred assessment of any standing issue until reaching a ruling on the warrant's merits. DE ##53, 65 (Minute Entries). This decision forecloses the need to evaluate whether Nathan Rankin could himself attack the warrant. For purposes of the record, the Court **GRANTS** the motion to join (DE #45) but without a finding on the reserved issue of whether Nathan Rankin would have a sufficient Fourth Amendment interest to take advantage of a pro-defense suppression ruling.

1

- On or about March 3, 2011, police intercepted two Federal Express ("Fed Ex") packages containing "large" quantities of oxycodone ("OC") 30 mg tablets, one addressed to Allen Stacy and one to Cody Poor at locations in or around Lancaster, Kentucky. The packages originated in Nevada;

- On or before March 2, a cooperating witness placed a controlled call to Stacy during which the witness discussed purchasing OC from Stacy. Stacy indicated he was waiting on a Fed Ex package to be delivered the day of the call;

- The KSP made a controlled delivery to the Stacy address on March 3, with a warrant in hand. Latasha Rankin, the current (but soon to be ex-) wife of Defendant Nathan Rankin, was on the scene. Nathan allegedly had provided her a contact in Nevada for OC, and Latasha claimed she gave the contact information to Allen Stacy, who was "ordering" the packages;[2]

- The KSP also made a controlled delivery to the Cody Poor address, while Poor was home. Poor indicated that Defendant Ricky Rankin contacted him about allowing "a package to be delivered to his [Poor's] residence for him [Rankin]." The Fed Ex package was the second such delivery incident; Poor reported having received another package for Rankin a week prior. As to the prior package, "Cody stated that once he obtained the package he delivered it to Ricky Rankin's residence at 111 Price Court [in Lancaster]";

- Poor placed a controlled call to Rankin, and Rankin said he would pick the package up. Poor asked for his "two or three," intending the OC tablets Poor expected for receiving the package. Rankin stated "they were in with the ones that he had," which Poor interpreted as meaning within the package. As noted, the package affirmatively contained OC tablets;

- Confirming the call, Ricky Rankin promptly showed up at the Poor residence accompanied by Nathan Rankin and April Young. Police immediately effected arrest and searched Ricky Rankin's vehicle and person. The search yielded "a quantity of oxycodone tablets . . . along with numerous receipts for postage for packages from Nevada to Kentucky [and] numerous money grams from Ricky Rankin and his wife Brandy Rankin to individuals in Nevada";

- Young indicated she previously had purchased narcotics from Nathan Rankin. She relayed that she had driven to Ricky Rankin's residence that day and she, along with the Rankins, then had gone from that residence "straight" to the Poor residence.

---

[2] Allen Jason Stacey and Latasha Rankin currently both face drug trafficking charges, along with a charge of using a communication facility to distribute a controlled substance, in 5:11-CR-115-KKC, *United States v. Allen Jason Stacey et al.* The Court here addresses Stacey by Stacy, the name used in the affidavit.

- Young accompanied police to the Rankin residence, and law enforcement confirmed that her vehicle was at the Rankin address. Investigation also showed another Rankin-registered vehicle at that Price Road address, and police verified that Ricky Rankin's license listed 111 Price Road as his residence; and

- Ricky Rankin's record indicates controlled substance convictions from 1986 and 1998.

The defense contends that Poor was an unreliable information source, that no adequate nexus existed relative to the search site, and that *Leon* would not spare the search. DE #58 (Supplemental Memorandum). The Motion requests suppression of fruits from the Price Court search. The Government advocates for probable cause or, at a minimum, *Leon* validation. DE #62 (Response).

The Court did receive some evidence at the hearing. After a thorough discussion of the typical four-corners analysis in the warrant and *Leon* contexts, each side sought to offer extrinsic proof. The United States called the affiant, Detective Keith Addison, who described in additional detail the exact statements Poor made on the date of the controlled Fed Ex delivery. The defense offered tapes from the Cody Poor investigation (Poor's taped interview, Young's interview, and the Rankin-Poor controlled call). The Court has considered all briefing and the full record in the case.

**II.   Analysis**

   *A. Probable Cause*

   1. Governing Principles

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. Probable cause exists when there is "a fair probability that evidence of a crime will be located on the premises of the proposed

3

search." *United States v. Jenkins*, 396 F.3d 751, 761 (6th Cir. 2005) (citation omitted).  The issuing judge considers the "totality of the circumstances" in making a practical, common-sense assessment.  *Illinois v. Gates*, 103 S. Ct. 2317, 2332 (1983).

In evaluating whether an executed warrant lacked probable cause, a reviewing court must accord "great deference" to the determination by the issuing judicial officer.  *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).  The deference afforded avoids hypertechnical critiques, and "an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised."  *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).  Thus, the issuing judge's probable cause determination complies with the Fourth Amendment when a "substantial basis" existed for concluding that a search would uncover evidence of wrongdoing.  *Gates*, 103 S. Ct. at 2331; *Allen*, 211 F.3d 973.  A court confines "substantial basis" review to the four corners of the supporting affidavit.  *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).  De novo review, or "line-by-line scrutiny" of the underlying affidavit, is "inappropriate."  *Allen*, 211 F.3d at 973 (citation omitted).

A warrant application must fairly establish, under the probable cause standard, a temporal and spatial nexus to the premises targeted.  Thus,

> In addition to requiring that the facts be sufficiently timely to support a belief that the evidence sought still exists at the *time* of a search, probable cause also requires a reasonable belief that the evidence sought will be found at the *location* of the search; in other words, there must be a nexus established between the items sought and the place to be searched. *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998).

*United States v. Pope*, 330 F. Supp. 2d 948, 956 (M.D. Tenn. 2004); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) ("There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" (quoting *Van Shutters*, 163 F.3d at 336-37)).

4

A judicial officer may properly rely on sufficiently *probative* hearsay evidence in determining whether probable cause exists. *See United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). The hearsay character of tendered information, and the relative quality of the information, is part of the overall totality of the circumstances assessed by a reviewing court.

Without question, adequate indicia of trustworthiness must accompany information in a warrant application for probable cause to exist. *Illinois v. Gates* eliminated the technical, multi-layer filter through which courts screened warrant applications under *Spinelli* and *Aguilar*. *See Gates*, 103 S. Ct. at 2328. But, while *Gates* removed the potential rigidity in the analysis, the Supreme Court still retained its long-standing, overarching requirement that information in a warrant application be appropriately supported as a basis for warrant issuance: "We agree . . . that an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all *highly relevant* in determining the value of his report." *Id*. (emphasis added); *see also id*. at 2332 (describing court's required evaluation based on "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information"). The Sixth Circuit plainly requires that some corroborative factor(s) appropriately support or otherwise substantiate hearsay proffered in the warrant context:

> This Court has previously explained that "[a]n affidavit . . . must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable."

*Helton*, 314 F.3d at 822 (quoting *Smith*, 182 F.3d at 477). Further,

> When confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information.

5

*Helton*, 314 F.3d at 819; *see also Allen*, 211 F.3d at 976 (recognizing that cases "rightly insist[] upon substantial independent police corroboration . . . [in] the absence of any indicia of the informants' reliability"). Hearsay may supply probable cause, but only if that hearsay is sufficiently worthy of credit:

> In testing the sufficiency of probable cause . . . we have held that [an officer] may rely upon information received through an informant, rather than upon his direct observations, *so long as* the informant's statement is reasonably corroborated by other matters within the officer's knowledge.

*See Helton*, 314 F.3d at 819 (emphasis added) (quoting *Jones v. United States*, 80 S. Ct. 725, 735 (1960), *overruled on other grounds by United States v. Salvucci*, 100 S. Ct. 2547 (1980)).

"Veracity" or "reliability" concerns the general credibility of the informant or whether the specific information provided by the informant is contextually dependable. *See Smith*, 182 F.3d at 477. A supporting affidavit may demonstrate the informant's reliability or veracity by simply explaining the informant's "past performance" and record of involvement with authorities. *See id*. at 478; *Frazier*, 423 F.3d at 532. "Basis of knowledge" refers to the particular means by which an informant obtained particular information. *See Smith*, 182 F.3d at 477. The issuing judicial officer may reasonably infer that an informant gained his information in a reliable way when the informant provides an explicit and detailed description of the alleged wrongdoing. *See id*. When there is no indication about how an informant obtained his information, "explicitness of detail is needed." *See Smith*, 182 F.3d at 481. Anonymous tips demand more stringent scrutiny than reports from confidential informants. *See Helton*, 314 F.3d at 820. When an application names the information source, thus associating a confirmed and responsible identity behind allegations presented to a decision maker, courts logically require lesser corroboration. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) ("[T]he

warrant here named the informants, and named informants, unlike confidential informants, require little corroboration.").

Again, these are factors within the total evaluation, not formulaic elements. Still, the Sixth Circuit makes clear that uncorroborated information from a source not adequately qualified as trustworthy and reliable is *not sufficient* by itself to establish probable cause: "[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain *substantial* independent police corroboration." *Frazier*, 423 F.3d at 532 (emphasis added); *see also Allen*, 211 F.3d at 976.

2. The Subject Warrant[3]

---

[3] Here, the Court should (and does) only consider the content of the affidavit in assessing both probable cause and *Leon* good faith. Both sides offered extrinsic proof, but the four corners of the document set the content limit. *See Frazier*, 423 F.3d at 513. The added proof—testimony from the affiant and consideration of the taped Poor interview—centers on whether Poor actually claimed to have delivered the first package to Rankin's residence. The defense argues that Poor did not say that on the tape, thus contradicting the affidavit and suggesting the affiant may have misled or lied to the issuing court by the affidavit content. The United States argues that the tape is not the universe of Poor's statements, and that Poor did confirm delivery to Rankin's address as part of his full interaction with police on the day in question.

Only a *Franks* issue normally permits impeachment of an affidavit. *Franks v. Delaware*, 98 S. Ct. 2674 (1978). *Franks* allows a hearing on affidavit content if a defendant seeking suppression make a substantial preliminary showing indicative of affiant falsehood. *See United States v. Purifoy*, 396 Fed. App'x 202, 208 (6th Cir. 2010) ("Thus, under *Franks,* a defendant is entitled to a hearing challenging "the sufficiency of an executed search warrant" if "(1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." (quoting *United States v. Atkin,* 107 F.3d 1213, 1216–17 (6th Cir.1997))). Here, the defense did not make an adequate showing. Stripped down, Ricky Rankin's argument is that the taped statement shows that police did not find Poor particularly credible, as shown by repeated attacks on Poor's credibility on the tape. Nathan Rankin also suggests that police acted with reckless disregard for truth by including Poor's information in the warrant despite strong suspicion by police that Poor was not believable. None of this amounts to a *Franks* showing. The affidavit does not depict Poor as inherently credible, and police acted on his information only after significant corroboration: Rankin promptly arrived to pick up the package containing OC, just as Poor arranged through the recorded call, and Rankin was in possession of OC and highly

7

The Garrard Circuit Judge, who did not issue the subject warrant arbitrarily, had a substantial basis on which to issue said warrant based on the totality of the information presented, all of which coalesced to establish a fair probability that contraband existed at Rankin's Price Court[4] residence. The determinative factors include the following:

(1) The two Nevada-originating packages, intercepted en route to residential Garrard County addresses, did contain significant oxycodone quantities;

(2) The Stacy delivery followed a call indicative of current or planned OC trafficking by Stacy. Latasha Rankin cited to Nathan Rankin as the point of information for Stacy's Nevada source, creating a problematic trafficking inference with respect to Nathan Rankin;

(3) The affidavit does not disclose the relationship between the Rankins, but they showed up together at Cody Poor's house, have the same last name, and April Young indicated that she left with both from Ricky Rankin's residence on March 3;

(4) The affidavit well supports that Ricky Rankin arranged for delivery of the OC to Cody Poor's residence. This was Poor's story, and Rankin's response to the controlled phone call (positively replying to package arrival and then immediately appearing) is strong corroboration of the Poor version. Use of a straw man with respect to oxycodone delivery is inherently suspicious and incriminating, supporting an inference of trafficking by Ricky Rankin;

---

incriminating documentation at the time. It simply is not accurate to depict police as staking much on Poor's credibility, and the defense's showing does not warrant consideration of extrinsic information.

That said, the parties did put their proof into the record. As an alternative holding, the Court finds that Poor did confirm on the tape that he had taken the first package to Rankin's residence on Price Court. *See* DE #66 (Tape) at 32:55-33:10. Indeed, he was to take the second package there also, *id.* at 18:15-18:20, but police wanted Rankin to pick the package up himself. Further, Det. Addison's testimony clearly established that Poor reconfirmed the first package delivery in a second, unrecorded statement that occurred while Poor and law enforcement awaited Ricky's arrival. Thus, even if Defendants met the *Franks* threshold, the Court would not give substantive relief because the affiant did not lie to or mislead the Court. The affidavit's content was accurate.

[4] Defendants do not make an issue of whether Price Court or Price **Road** was the proper name of the residential street. The warrant applies to Price Court and the affiant intermixes "Court" and "Road", *e.g.*, with reference to Rankin's driver's license. Defendants also do not criticize the failure of the application to list the contraband sought, and the Court notes that the warrant itself particularizes the evidence at issue.

(5) Certainly, Poor's story about the first package is important. Per Poor, he also received a package for Rankin a week prior, and he delivered that package to Rankin's residence. Poor provided officers the street Rankin lived on, which was corroborative. Further, Rankin's positive phone response (*e.g.*, regarding the "2 or 3" for payment to Poor) substantiates that this was not the first such transaction between the two persons;

(6) April Young's report of prior narcotics purchases from Nathan Rankin would be self-incriminating and would further support a negative inference about the purpose of the OC package in this incident; and

(7) Perhaps the corroborative key is the evidence found on Ricky Rankin's person and in his car. The search yielded OC tablets, "numerous" receipts for postage for packages from Nevada to Kentucky and "numerous" money grams from Rankin and his wife to individuals in Nevada. Given that Poor's package was coming from Nevada (the site of Nathan Rankin's alleged source), given that the package contained OC, and given that Rankin indicated Poor's "2 or 3" were in the package, a picture emerges of Rankin regularly receiving OC by mail or carrier delivery from a Nevada source(s). The trafficking implication from this is, at a minimum, fair and reasonable.

Defendants criticize Poor's credibility but, again, police significantly corroborated Poor's allegations. Contrary to Ricky Rankin's argument, the affiant plainly depicts Poor as a conspirator in the delivery, especially given his expected payment via OC tablets. The warrant pursuit turned on whether Rankin in fact had arranged the delivery, and police ultimately acted because of Rankin's confirmatory behavior—he immediately came to retrieve his package (containing OC) from Poor's home, and evidence recovered from Rankin's person and vehicle directly fingered him as repeatedly dealing with a Nevada source through money and mailings. The totality of this substantiates Poor's statements about the package he accepted delivery of on March 3, and further corroborates his story of accepting **and** delivering to Rankin's residence a similar package the week prior. Poor's inherent reliability was not a significant factor; his objectively confirmed story is what mattered.

The affidavit undoubtedly established, in the warrant context, that Rankin lived at the Price Court or Price Road address. Police based this on his license, the location of April

Young's vehicle, Poor's report, and the location of another Rankin-registered car. The only real question is nexus—did cause exist to search Rankin's address? The answer is yes.

Poor's prior delivery indicates that Rankin, within a week of the March 3 delivery, had received a similar package, delivered via straw man (Poor) to **Rankin's residence**. That package did not indisputably contain OC, but the negative inference is reasonable. Again, Rankin used a third-party recipient; he later had OC delivered to Poor; Poor expected payment in OC tablets the second time; and Rankin picked the package up while in possession of OC and strong documentation of regular monetary and mail transactions related to Nevada. Latasha Rankin's information concerning Nathan Rankin (as the portal to a Nevada OC source) bolsters this interpretation. Thus, the affidavit provides direct evidence linking suspicious conduct to the search target, Rankin's residence.

Further, the trafficking criteria buttress, if not prove, the propriety of the warrant. Sixth Circuit authority is not easily harmonized in the context of nexus relative to an accused drug trafficker's residence, to wit: "[t]he mere fact that someone is a drug dealer is not alone sufficient to establish probable cause to search their home." *United States v. Gunter*, 266 F. App'x 415, 418 (6th Cir. 2008); *see also Frazier*, 423 F.3d at 533 ("[T]he allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence."). However, many Sixth Circuit decisions avoid, if not contradict, that categorical proposition:

> [A]n allegation of drug dealing based on information from an untested confidential informant is insufficient to establish probable cause to search the alleged drug dealer's home. However, where the allegation of drug dealing is coupled with independently corroborated information from police officers, it may be sufficient to establish probable cause.

*United States v. McPhearson*, 469 F.3d 518, 525 n.3 (6th Cir. 2006); *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007) ("In . . . *Miggins* . . . we held, following a long line of precedents, that a sufficient nexus existed to search the residence of a known drug dealer after he had been arrested for possession of cocaine." (citing *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002))). As the court said in 2010:

> In a recent line of cases, we have held that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking. . . . . Such an inference is reasonable because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'

*United States v. Rice*, 405 Fed. App'x 959, 962-63 (6th Cir. 2010) (quoting first *Williams*, 544 F.3d at 687 and then *Gates*). The district court's decision in *United States v. Castro*, No. 1:07CR360, 2008 WL 2017571, at *9 (N.D. Ohio May 7, 2008) helpfully synthesized the applicable authority:

> In sum, to establish probable cause to search the residence of a defendant, the Sixth Circuit requires either: (1) substantiated, reliable testimony that the defendant is a drug dealer with "continual and ongoing operations;" or (2) an affidavit containing "an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendants' homes."

*Id.* (citations omitted). The key, it appears, is the "independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes." *McPhearson*, 469 F.3d at 524-25 (citation and footnote omitted); *Gunter*, 266 F. App'x at 419 ("Reading *Frazier*, *Miggins* and *Caicedo* together, this Court's precedents establish that a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence. When, however, the only evidence of a connection between illegal activity and the residence is unreliable, such as

uncorroborated statements by a confidential informant, then a warrant may not issue allowing the search of the residence." (citations omitted)).

Here, the affidavit reliably depicts Rankin as an OC trafficker with an ongoing and significant operation. *See United States v. Bethal*, 245 F. App'x 460, 467 (6th Cir. 2007) (confirming vitality of rule "that the fact that a defendant who is a drug dealer with 'continual and ongoing operations' in and of itself creates probable cause to search his home"). Again, for the second time in a short period Rankin suspiciously used a straw man to take delivery of OC, confirmed at least as to package two. The contraband and other evidence in Rankin's possession (including OC and the Nevada-related papers) and his confirmation of payment to Poor (in OC), along with Nathan Rankin's alleged Nevada connection, support fairly a view that Rankin was actively trafficking in OC. Sixth Circuit authority thus validates the locational nexus in this case, which Poor's recent[5] delivery of package one— an additional fact tied directly to the residence itself—certainly solidifies even further. *See Williams*, 544 F.3d at 687 ("[W]e have held that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking.") (citations omitted). For all of these reasons, the Court determines that the issuing state judge did not arbitrarily issue the subject warrant. The District Judge should therefore **DENY** the suppression motion.

*B. Leon Application*

Even without probable cause, evidence subject to suppression may survive the exclusionary rule under the *Leon* good faith exception. In *United States v. Leon*, 104 S. Ct. 3405 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule will not bar

---

[5] Rankin's suggestion of staleness here is unavailing. The interval between packages was only one week, and Rankin still had OC on his person when package two arrived. The temporal relevance of the package one delivery is incontestable.

evidence seized in reasonable, good faith reliance on a search warrant subsequently determined to be invalid. *See id.* at 3413; *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993). In such cases, application of the exclusionary rule yields no additional deterrent effect, given that the officer's reliance on the warrant was objectively reasonable. *See United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006).

The Supreme Court identified four situations where *Leon* good faith would *not* exist: (1) where the affiant provided false information to the issuing judge and knew or should have known about the falsity; (2) where the issuing magistrate "wholly abandoned his judicial role"; (3) where the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause, or in other words, the warrant application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient" that the "executing officers cannot reasonably presume it to be valid." *Leon*, 104 S. Ct. at 3421 (citations omitted); *see also Helton*, 314 F.3d at 824 (reciting standard).

The Court already rejected any *Franks* argument, which is the basis for the first exception. *See supra* note 3. Further, nothing undermines the neutrality or detachment of the Garrard Circuit Court judge in this matter. The warrant also is not facially deficient. Thus, the defense argument primarily targets the affidavit as, in effect, "bare bones."

In *McPhearson*, the Court defined a "bare bones" affidavit as one that "merely 'states suspicions, beliefs, or conclusions, *without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge*.'" 469 F.3d at 526 (quoting *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996)) (emphasis added). Regardless of some linguistic discrepancies in the formulation of *Leon*, the Sixth Circuit consistently applies the same test in

cases where the defendant claims an officer's reliance on a warrant was objectively unreasonable: whether a reasonably well-trained officer would have known that the search was illegal despite the issuing magistrate's authorization. *See Leake*, 998 F.2d at 1367; *Weaver*, 99 F.3d at 1380.

Ordinarily, the "determination of good-faith reliance, like the determination of probable cause, must be bound by the four corners of the affidavit." *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). The United States generally bears the burden of proof when attempting to invoke *Leon*. *See United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006); *see also Leon*, 104 S. Ct. at 3421 (referencing prosecution's burden "to establish objective good faith").

Should the District Court reject probable cause, *Leon* still would validate the search. Importantly, and perhaps axiomatically, the good faith standard is a lower threshold than probable cause. *See Carpenter*, 360 F.3d at 595 (agreeing that *Leon* good faith requires a "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place" (citation omitted)). Here, the affidavit does not rely on conclusory opinions from law enforcement but rather sets forth empirical events and objective, substantially corroborated facts to provide the basis for warrant issuance. As to the alleged nexus to the residence, the affidavit provides a significant foundation for the probable cause analysis and finding. The affidavit easily meets the reasonable, good faith basis *Leon* minimally requires, particularly given Sixth Circuit nexus authority. *See id.* at 595, 596 (affirming adequate nexus where affidavit "was not completely devoid of any nexus" and referencing affidavit as valid if "not totally lacking in facts connecting the residence" to the crime); *United States v. Feagan*, No. 1:07-CR-96, 2008 WL 4239766, at *9 (E.D. Tenn. July 1, 2008) (holding warrant valid under *Leon*, despite no probable cause on "nexus," where "the connection between the

drug dealer and the place to be searched is not so remote as to lack indicia of probable cause") (citations omitted). The affidavit was not bare bones, and law enforcement's reliance on issuance by the state judge was objectively reasonable. Poor admitted to recently receiving and then delivering a suspect package to Rankin's address, and information strongly indicated that Rankin had an active trafficking operation dependent on Nevada sources. As such, and consistent with corroborated proof and the Sixth Circuit's standards, *Leon* confirms that evidence acquired under the warrant should not be suppressed.

## III. RECOMMENDATION

For the reasons stated, the District Court should **DENY** the motion to suppress in its entirety.

\* \* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. As defined by § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this recommended decision, any party may serve and file specific written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

This the 24th day of January, 2012.



Signed By:
*Robert E. Wier*
United States Magistrate Judge